UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINZALE GREER, (TDCJ #01725266) | § § § | |
| Plaintiff, | § § | |
| vs. | § | CIVIL ACTION NO. H-21-3976 |
| BRYAN COLLIER, *et al.*, | § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Texas state inmate Linzale Greer, representing himself and proceeding without prepaying the filing fee, filed a complaint under 42 U.S.C. § 1983 arising from the enforcement of Texas Board of Criminal Justice Policy BP-03.91 (rev. 5), entitled "Uniform Inmate Correspondence Rules." (Docket Entry No. 1). Since the initial complaint was filed, the court has granted Greer leave to amend or supplement his complaint five separate times. (Docket Entry Nos. 12, 15, 22, 27, 31). After screening under 28 U.S.C. § 1915A, the court ordered a response from four defendants: Bobby Lumpkin, as Executive Director of TDCJ-CID; Patrick O'Daniel, as Chairman of the Texas Board of Criminal Justice; Eric Guerrero, as Chairman of the Director's Review Committee; and Margarita Thomas, as Mailroom Supervisor of the Wynne Unit. (Docket Entry No. 29). The defendants responded with a joint motion to dismiss. (Docket Entry No. 33). Greer filed a response to the motion, along with a motion seeking leave to file another amended complaint. (Docket Entry Nos. 48, 49). The defendants oppose Greer's request for further leave to amend. (Docket Entry No. 50). After considering Greer's amended and supplemental amended complaints, the motion to dismiss and responses, the record, and the applicable law, the court

denies Greer's motion for leave to amend, grants the defendants' motion to dismiss, and dismisses his claims against the defendants. The reasons are explained below.

I.  **Background**

   A.  **Factual and Procedural Background**

Greer is currently in TDCJ custody serving a thirty-year sentence for aggravated kidnapping. *See* www.tdcj.texas.gov (last visited May 3, 2023). On December 3, 2021, he filed a complaint alleging that Margarita Thomas, the Wynne Unit Mailroom Supervisor, had denied him a publication entitled "Letters to Penthouse: Horny Milfs and Cougars on the Prowl" under Texas Board of Criminal Justice Policy 03.91 ("BP-03.91"), in violation of his constitutional rights. (Docket Entry No. 1, p. 4). He alleged that Rocky Moore, as the Warden of TDCJ's Wynne Unit, was liable as Thomas's supervisor and that Bryan Collier, as the Executive Director of TDCJ, was liable because of his position with TDCJ. (*Id.* at 3). Greer sought an injunction to require Thomas to provide him with the publication and to require all the defendants to remove that publication from TDCJ's banned publication list. (*Id.* at 6).

Greer then sought leave to either amend or supplement his complaint on January 14, 2022, (Docket Entry Nos. 10, 11), January 31, 2022, (Docket Entry No. 13), February 15, 2022, (Docket Entry No. 17), April 11, 2022, (Docket Entry No. 19), and May 5, 2022, (Docket Entry No. 21). These multiple amended and supplemental complaints sought to add and delete defendants, add claims, and add publications that Greer contends he was improperly denied under BP-03.91. The court granted each of Greer's motions and accepted his amended and supplemental complaints. (Docket Entry Nos. 12, 15, 22). At the court's request, Greer also provided a More Definite Statement of his claims. (Docket Entry No. 26).

2

On June 17, 2022, Greer filed a motion seeking leave to file another supplemental complaint. (Docket Entry No. 24). On July 1, 2022, he voluntarily dismissed certain defendants and sought leave to file yet another amended complaint. (Docket Entry No. 25). On August 27, 2022, the court dismissed the defendants identified by Greer and granted him leave to amend to the extent needed to comply with a court order to file a "complete amended complaint" that identified each defendant he wished to sue, identified every claim he wished to make, and specified the relief he sought from each defendant. (Docket Entry No. 27).

Greer filed his amended complaint in response to the court's order on September 1, 2022, naming Lumpkin, O'Daniel, Guerrero, and Thomas as defendants. (Docket Entry No. 28, p. 3). The amended complaint alleges that BP-03.91 is unconstitutional both on its face and as applied and that the defendants have used it to deny him three publications: "Letters to Penthouse: Horny Milfs and Cougars on the Prowl"; "Striptease (Big Booty Women)"; and "Give Yourself Credit." (*Id.* at 5-7). Greer alleges that he was denied the Letters to Penthouse and the Striptease publications because prison officials determined that they contained "sexually explicit images." (*Id.* at 5-6). He alleges that he was denied the book "Give Yourself Credit" because prison officials determined that it contains information that could be used to commit fraud. (*Id.* at 6). He alleges that the Director's Review Committee upheld the rejection of each of these publications. (*Id.*).

Greer seeks a declaration that BP-03.91 is unconstitutional on its face and as applied. (*Id.* at 7). He seeks an injunction requiring the defendants to provide him with the rejected publications and to stop enforcing BP-03.91. (*Id.* at 7-8). He asks the court to order the Texas Board of Criminal Justice to amend BP-03.91 to delete the provision concerning sexually explicit images. (*Id.* at 7). He also seeks an award of nominal damages. (*Id.* at 8).

The court ordered the defendants to respond to the amended complaint. (Docket Entry No. 29). The same day that order was issued, Greer filed a motion seeking leave to file another supplemental complaint. (Docket Entry No. 30). The proposed supplemental amended complaint includes a fourth publication that Greer was denied under BP-03.91, which he identifies as a catalog from InmateConnection.com. (Docket Entry No. 30-2, p. 1). Greer alleges that the defendants rejected this catalog because it contained more than ten photographs. (*Id.* at 1-2). He contends that the provision of BP-03.91 limiting the number of photographs in correspondence and publications violates his First Amendment rights because the number of photographs bears no relation to any threat to the prison. (*Id.*). The court granted Greer leave to amend and accepted the supplemental amended complaint. (Docket Entry Nos. 31, 32).

On October 31, 2022, the defendants responded to both the amended and supplemental amended complaints with a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket Entry No. 33). Lumpkin and O'Daniel argue that sovereign immunity protects them from Greer's claims against them in their official capacities. (*Id.* at 4-9). All the defendants argue that Greer's remaining claims should be dismissed because he fails to state a claim for a violation of his constitutional rights. (*Id.* at 9-13). They also assert that even if Greer's allegations show a constitutional violation, they are entitled to qualified immunity. (*Id.* at 13-14).

After multiple requests for extensions of time, Greer filed his response to the motion to dismiss on March 24, 2023. (Docket Entry No. 48). In that response, Greer voluntarily dismisses his claims against Lumpkin. (*Id.* at 2). He also "clarifies" that he is suing O'Daniel, Guerrero, and Thomas for declaratory and injunctive relief in their official capacities and for damages in their individual capacities. (*Id.*). In addition to responding to the motion to dismiss, Greer asks the court for leave to file another amended complaint to "clarify" that he is alleging an ongoing

violation of his First Amendment rights and to more narrowly tailor his request for relief. (*Id.*). He also seeks to "completely amend[] his factual and legal claims," including adding multiple new factual allegations and an entirely new claim of retaliation. (Docket Entry Nos. 48, p. 3; 49).

The defendants filed their opposition to Greer's request for leave to amend, pointing out that Greer had already been given no fewer than five opportunities to amend his complaint. (Docket Entry No. 50, p. 3). They argue that Greer's motion for leave to amend, filed five months after they filed their motion to dismiss and after Greer had been granted three extensions of time to respond, was made in bad faith. (*Id.* at 3 n.3). They also contend that the motion should be denied because Greer's proposed amendment is futile in light of existing Supreme Court and Fifth Circuit precedent. (*Id.* at 3).

### B. Board Policy BP-03.91

Greer challenges the constitutionality, both facial and as applied, of the amended version of BP-03.91. (Docket Entry No. 28, pp. 4-8). As amended,[1] BP-03.91 sets forth TDCJ's policy concerning correspondence and publications that inmates may send and receive. (Docket Entry No. 33-1).[2] Greer challenges the section of BP-03.91 that prohibits inmates from receiving correspondence or publications containing one or more "sexually explicit images." (*Id.* at 12, 14). BP-03.91 defines a "sexually explicit image" as:

> [M]aterial in publications, photographs, drawings, or any type of image, which depicts sexual behavior, is intended to cause sexual excitement or arousal, or shows: frontal nudity of either gender, including the exposed female breast(s) with nipple(s) or areola(s); the genitalia, anus, or buttocks, or partially covered buttocks

---

[1]The amendments to BP-03.91 were promulgated on June 25, 2021, and became effective on August 1, 2021. (Docket Entry No. 33-1, p. 3).

[2]The defendants attached a copy of BP-03.91 to their motion to dismiss. (Docket Entry No. 33-1). The court may consider this document without converting the motion to one for summary judgment because Greer referred to BP-03.91 in his Amended and Supplemental Amended Complaints and it is central to the claims he makes. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

5

>of either gender; the discharge of bodily fluids in the context of sexual activity; or sexual behavior from any vantage point.

(*Id.* at 5). Greer also challenges the section of BP-03.91 that prohibits inmates from receiving correspondence and publications containing information about "plans for future criminal activity." (*Id.* at 12). He further challenges the section of BP-03.91 that prohibits inmates from receiving correspondence containing more than ten photographs. (*Id.* at 8).

In addition to identifying what correspondence and publications TDCJ will accept and reject for inmates, BP-03.91 sets forth the procedures by which incoming publications will be reviewed in the mailroom and through which inmates may appeal a decision rejecting incoming publications. (*Id.* at 12-17). Those provisions state that "[a]ll publications are subject to inspection by the [Mail System Coordinators Panel] and by unit staff," and they give the MSCP "the authority to accept or reject a publication for content, subject to review by the [Director's Review Committee]." (*Id.* at 15). A publication may be rejected if it contains a single sexually explicit image. (*Id.* at 14). It may also be rejected if it "contains material on the setting up and operation of criminal schemes or how to avoid detection of criminal schemes by lawful authorities." (*Id.*). If correspondence is rejected, the MSCP will notify the inmate of the rejection and explain the availability of review by the DRC. (*Id.*). Books and magazines that are rejected by either mailroom staff or the MSCP are automatically reviewed by the DRC. (*Id.* at 16). The DRC must make a decision on a publication within two weeks of receiving an appeal and must notify the inmate of its decision within two days. (*Id.* at 17).

Greer alleges that BP-03.91 violates his First Amendment rights because its definition of a "sexually explicit image" is vague and overbroad. (Docket Entry No. 28, pp. 5-6). He also denies that the rejected "Letters to Penthouse" and "Striptease" publications contain "sexually explicit images." (*Id.*). He denies that the book "Give Yourself Credit" contains information that could

6

be used to perpetrate fraud. (*Id.* at 6-7). And he alleges that the limitation on photos to ten per envelope, which barred his receipt of the InmateConnection.com catalog, is censorship that bears no relation to any threat to the prison. (Docket Entry No. 32, p. 2).

## II.     The Legal Standards

### A.     Actions Under 42 U.S.C. § 1983

Greer brings his claims against the defendants under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). When the facts alleged by the plaintiff, taken as true, do not show a violation of a constitutional right, the complaint is properly dismissed for failure to state a claim. *See, e.g., Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (per curiam); *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 421 (5th Cir. 2006).

### B.     Motions to Dismiss

The defendants move to dismiss the amended and supplemental amended complaints under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss under Rule 12(b)(1) challenges the court's jurisdiction to hear the case. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A motion under Rule 12(b)(1) is properly granted when the court lacks the statutory or constitutional power to hear the case, such as when the claims are barred by a state's sovereign immunity. *See High v. Karbhari*, 774 F. App'x 180, 182 (5th Cir. 2019) (per

curiam) (citing *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009), and *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005)).  Because a Rule 12(b)(1) motion challenges the court's jurisdiction, "[w]hen a Rule 12(b)(1) challenge is filed with other Rule 12 motions, the court should address the Rule 12(b)(1) motion 'before addressing any attack on the merits.'" *D&G Holdings, L.L.C. v. Becerra,* 22 F.4th 470, 474 (5th Cir. 2022) (quoting *Ramming*, 281 F.3d at 161).

A motion to dismiss under Rule 12(b)(6) is properly granted when the plaintiff's complaint fails to state a claim upon which relief can be granted.  When a court considers a motion under Rule 12(b)(6), "the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).  The court may also consider a document to which the plaintiff refers in his complaint and that is critical to his claims, even if that document is not attached to the complaint.  *See Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

In ruling on a Rule 12(b)(6) motion, the court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (cleaned up).  But to survive a motion to dismiss, the complaint must include specific facts, not conclusory allegations.  *Id*.  The complaint must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Gomez*, 18 F.4th at 775.  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

8

(cleaned up). If the facts alleged are facially sufficient, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). But if the complaint does not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Id.* at 570.

### C. *Pro Se* Pleadings

Greer is representing himself. Courts construe pleadings filed by self-represented litigants under a less stringent standard of review. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But even under this liberal standard, self-represented litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014). They must also "properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (cleaned up).

## III. Discussion

### A. The Claims Against Bobby Lumpkin

In his amended and supplemental amended complaints, Greer seeks an injunction preventing Lumpkin from enforcing the BP-03.91 provision on sexually explicit images and ordering him to provide the previously rejected publications to Greer. (Docket Entry No. 28, pp. 7-8). But in his response to the defendants' motion to dismiss, Greer voluntarily dismisses his

9

claims against Lumpkin. (Docket Entry No. 48, p. 2). Based on this statement, the court dismisses the claims against Lumpkin without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i).

### B. The Claims Against Patrick O'Daniel

#### 1. Official Capacity Claims for Injunctive Relief

Greer sues O'Daniel in his official capacity as the Chairman of the Texas Board of Criminal Justice, seeking an injunction preventing O'Daniel from enforcing the BP-03.91 provision on sexually explicit materials, ordering him to amend the provision on sexually explicit materials, and ordering him to provide Greer with the previously rejected publications. (Docket Entry Nos. 28, pp. 3, 7-8; 48, p. 2). O'Daniel contends that sovereign immunity bars these claims.

When a government employee is sued in his or her official capacity, the employing entity is the real party in interest for the suit. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity"). To the extent that Greer sues O'Daniel in his official capacity as Chairman of the TBCJ, Greer's action is viewed as one against the State of Texas.

But actions brought against a state in federal court are subject to the Eleventh Amendment's bar to an action in federal court by a citizen of a state against that state or a state agency. *See Martinez v. Dep't of Crim. Just.*, 300 F.3d 567, 574 (5th Cir. 2002). When a plaintiff seeks injunctive relief against a state official in a § 1983 claim, Eleventh Amendment sovereign immunity protects that official when the claims are based on past actions and past violations of federal law rather than ongoing actions and continuing violations. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) (citing *Ex parte Young*, 209 U.S. 123 (1908)). To determine whether the

plaintiff's claims are barred by sovereign immunity, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). If the plaintiff seeks only retroactive relief, sovereign immunity bars the claim. *See Green,* 474 U.S. at 71.

Greer's claim for an injunction requiring O'Daniel to give him publications that were previously rejected seeks retroactive relief because it seeks a remedy for an alleged past constitutional violation rather than protection from an ongoing violation. *See, e.g., Catanach v. Thomson*, 718 F. App'x 595, 598-99 (10th Cir. 2017) ("Catanach sought relief from past harms, i.e., relief from Thomson's past rulings on his motions for recusal and for summary judgment and his failure to grant an expedited hearing or to require the City to issue a surety bond with its application for an injunction. The district judge was correct—these claims do not allege an ongoing violation of federal law."); *Rhoades v. Martinez,* 560 F. Supp. 3d 1039, 1047 (S.D. Tex.) (a request for either declaratory or injunctive relief based on an alleged past violation of the plaintiff's federal rights seeks retroactive relief), *aff'd*, No. 21-70007, 2021 WL 4434711 (5th Cir. Sept. 27, 2021). This claim against O'Daniel for this retroactive relief is barred by sovereign immunity and is dismissed without prejudice under Rule 12(b)(1).

But Greer's claims to require O'Daniel to amend BP-03.91 and to prevent him from enforcing BP-03.91's provision on sexually explicit images seek prospective relief. A plaintiff may be entitled to prospective injunctive relief against a state official in his or her official capacity if the claim falls within the exception to sovereign immunity created by *Ex parte Young*, 209 U.S. 123 (1908). *Young* "allows [a] plaintiff to sue a state official, in his official capacity, in seeking to enjoin enforcement of a state law [or policy] that conflicts with federal law." *Air Evac EMS,*

11

*Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017). The *Young* exception applies only when the state official being sued has "some connection to the state law's enforcement." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) (cleaned up). To satisfy this requirement, it is not enough that the official has a "general duty to see that the laws of the state are implemented." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). Instead, the official must have a specific duty to enforce the challenged law. *See Okpalobi v. Foster,* 244 F.3d 405, 414 (5th Cir. 2001). If the official sued is not "statutorily tasked with enforcing the challenged law," then the necessary connection is absent and "our *Young* analysis ends." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019); *see also K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) ("A plaintiff must show that the defendant state actors have the requisite 'connection' to the statutory scheme to remove the Eleventh Amendment barrier to suits brought in federal court against the State.").

Greer's claim for prospective injunctive relief against O'Daniel fails because O'Daniel has no enforcement authority under BP-03.91. While O'Daniel may have played some unidentified role in developing and adopting BP-03.91, that would not fall within the *Young* exception because the authority to formulate and promulgate policy "is not the power to enforce that policy." *Haverkamp v. Linthicum*, 6 F.4th 662, 670 (5th Cir. 2021); *see also Mi Familia Vota v. Abbott*, 977 F.3d 461, 463-65 (5th Cir. 2020) (the governor's promulgation of a regulation prohibiting mask mandates did not fall within the *Young* exception because enforcement was undertaken by local authorities rather than the governor). Because Greer's claims for prospective injunctive relief against O'Daniel do not fall within the *Young* exception, they are barred by sovereign immunity. These claims are dismissed without prejudice under Rule 12(b)(1).

### 2. Individual Capacity Claim for Damages

Greer also sues O'Daniel in his individual capacity, seeking an award of nominal damages for the alleged violation of Greer's First Amendment rights. (Docket Entry Nos. 28, pp. 3, 7-8; 48, p. 2). Greer alleges that O'Daniel "created the unconstitutional Board Policy-03.91," but he offers no factual allegations about O'Daniel's involvement in the creation or enactment of BP-03.91. (Docket Entry No. 28, p. 3).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (requiring an affirmative link between the conduct of the defendant and the injury)). "Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions[.] The plaintiff must allege specific facts giving rise to the constitutional claims." *Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).

Neither Greer's amended complaint nor his supplemental amended complaint contain any allegations concerning O'Daniel's personal involvement in the alleged constitutional violation. While the court recognizes that O'Daniel, as the TBCJ Chairman, may have played some role in developing and enacting BP-03.91, this fact alone is insufficient to rise to the level of "personal involvement." *See Schwarzer v. Lumpkin*, No. 6:18-cv-00029, 2021 WL 4438143 at *6 (S.D. Tex. Sept. 28, 2021) ("[E]ven if Chairman O'Daniel knew of or acquiesced to the policy, this alone is insufficient to rise to the level of 'personal involvement.'"). Without plausible allegations of affirmative personal participation by O'Daniel himself in the acts that allegedly violated Greer's First Amendment rights, Greer has failed to state a claim for individual liability against O'Daniel.

13

Greer's claim for damages against O'Daniel in his individual capacity is dismissed with prejudice under Rule 12(b)(6), because amendment would be futile.

### C. The Claims Against Eric Guerrero and Margarita Thomas

Greer sues Guerrero and Thomas in their official capacities, seeking an injunction ordering them to stop enforcing BP-03.91 and to give him the publications that were previously rejected. (Docket Entry No. 28, pp. 7-8). He also sues Guerrero and Thomas in their individual capacities, seeking nominal damages for their alleged violations of his First Amendment rights. (*Id.* at 8). Guerrero and Thomas argue that they are entitled to dismissal because Greer's allegations do not show a constitutional violation.

Greer's claim for injunctive relief against Guerrero and Thomas requiring them to provide the publications Greer was denied is barred by sovereign immunity for the same reasons that retroactive injunctive relief is unavailable against O'Daniel. *See Green*, 474 U.S. at 73. But Greer's claims for prospective injunctive relief against Guerrero and Thomas fall within the *Young* exception to sovereign immunity because both Guerrero and Thomas are specifically charged with enforcing BP-03.91. (Docket Entry No. 33-1, pp. 12-17). In addition, Greer's claim for monetary damages against Guerrero and Thomas alleges sufficient facts to show that each was personally involved in the alleged constitutional violations. But Greer's claims against Guerrero and Thomas must be dismissed because the facts he alleges, taken as true, do not show that either of them violated his First Amendment rights.

While a prisoner has "First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," *Pell v. Procunier*, 417 U.S. 817, 822 (1974), the scope of a prisoner's constitutional rights is more limited than that of individuals in society at large. *See Shaw v. Murphy*, 532 U.S. 223, 229 (2001). The Supreme

14

Court has held that prison policies infringing on constitutional rights, including First Amendment rights, are valid if those policies are "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The courts will generally defer to decisions made by prison officials about the policies they believe are necessary to preserve internal order and security by controlling the types of materials that are allowed into the prison. *Id.* at 416; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

In light of this deference due to prison officials, the Fifth Circuit has held that prison officials may limit prisoners' access to sexually explicit material, whether to further the prison's legitimate interest in preventing deviate criminal sexual behavior or to address other safety concerns. *See Thompson v. Patteson*, 985 F.2d 202, 205-06 (5th Cir. 1993); *Guajardo v. Estelle*, 580 F.2d 748 (5th Cir. 1978). This includes limiting "prisoners' access to sexually explicit materials even if they are not obscene." *Stroble v. Livingston*, 538 F. App'x 479, 480 (5th Cir. 2013) (per curiam). Based on these Supreme Court and Fifth Circuit rulings, district courts have held that BP-03.91, including its limitation on sexually explicit images, furthers legitimate penological interests and is not unconstitutional. *See, e.g., Teixeira v. O'Daniel*, No. A-22-CV-1155-RP, 2023 WL 3082350, at *4 (W.D. Tex. Apr. 25, 2023) (finding that the review procedure incorporated into BP-03.91 strikes the proper balance between the prison's interest in rehabilitation and security and a prisoner's First Amendment right to sexually explicit images); *Thompson v. Lumpkin*, No. 2:21-cv-00154, 2022 WL 4110926, at * (S.D. Tex. July 6, 2022) (finding that BP-03.91 does not violate the First Amendment), *report & recommendation adopted*, 2022 WL

4110160 (S.D. Tex. Sept. 7, 2022); *McCullough v. O'Daniel*, No. 2:21-cv-00176, 2022 WL 3219802, at *7 (S.D. Tex. July 6, 2022) (finding that BP-03.91 does not violate the First Amendment).

The Fifth Circuit has held that policies limiting a prisoner's access to sexually explicit materials are reasonably related to legitimate penological interests and so do not violate the First Amendment. *Thompson*, 985 F.2d at 205-06; *Stroble*, 538 F. App'x at 480. The Supreme Court has held that policies limiting publications that "might facilitate criminal activity" are reasonably related to legitimate penological interests and so do not violate the First Amendment. *Thornburgh*, 490 U.S. at 403 n.1. Greer has not alleged specific facts showing that the limitation on the number of acceptable photographs per mailing is not reasonably related to legitimate penological interests. *See Beard v. Banks*, 548 U.S. 521, 525 (2006) (to overcome the deference courts must show to prison officials, the plaintiff must allege specific facts that would warrant a decision in his favor). Greer's claims of a First Amendment violation are foreclosed by the Fifth Circuit's decisions in *Thompson* and *Stroble*. His allegations, taken as true, do not state a claim for relief based on a First Amendment violation.

Greer also alleges that Guerrero and Thomas have allowed other prisoners to receive the same publications that he was denied. (Docket Entry No. 28, p. 5). But even taking this allegation as true, Guerrero and Thomas's alleged failure to follow BP-03.91 in some instances does not, in and of itself, amount to a constitutional violation. *Samford*, 562 F.3d at 681 ("[A] prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation."]. This allegation, taken as true, does not state a claim for relief based on a First Amendment violation.

16

Greer's allegations fail to show that either Guerrero or Thomas violated his First Amendment rights. His claims against them fail to state a claim for relief under § 1983, and they are dismissed with prejudice under Rule 12(b)(6).

### D. Qualified Immunity

In the alternative, all three defendants contend that even if Greer's complaint alleged sufficient facts to show a First Amendment violation, the claims against them should be dismissed because they are entitled to qualified immunity. (Docket Entry No. 33, pp. 13-14). Qualified immunity protects government officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "A right is clearly established only if relevant precedent has placed the constitutional question beyond debate." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The law must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 566 U.S. 658, 664 (2012) (cleaned up).

Once the defense of qualified immunity is raised, "the burden shifts to the plaintiff who may rebut entitlement to immunity by demonstrating that 'the official's allegedly wrongful conduct violated clearly established law.'" *Sama v. Hannigan,* 669 F.3d 585, 591 (5th Cir. 2012) (quoting *Kovacic v. Villarreal,* 628 F.3d 209, 211–12 (5th Cir. 2010)). In his response to the defendants' motion, Greer does not allege facts showing that the defendants violated a clearly established right that a reasonable person would have known. As discussed above, the Supreme Court and the Fifth Circuit have held that prison officials may exercise their discretion to deny inmates publications and other materials that they determine, in their discretion, may interfere with

17

prison management. *Thornburgh*, 490 U.S. at 413; *Overton*, 539 U.S. at 132; *Thompson*, 985 F.2d at 205-06; *Stroble*, 538 F. App'x at 480. Given this case law, any alleged right Greer may have to possess these publications is not clearly established because existing precedent has not placed the constitutional question beyond debate. In this situation, when it is not clearly established under existing law that the defendants' actions violated a constitutional right, the defendants are entitled to qualified immunity. Greer's claims against the defendants are dismissed with prejudice on the basis of qualified immunity.

### E. Claim for Declaratory Relief

Greer also seeks a declaration that BP-03.91 is unconstitutional, both on its face and as applied to the publications he has been denied. (Docket Entry No. 28, p. 7). For the reasons explained in *Thompson* and *Stroble*, Greer is not entitled to the relief he seeks. *See Thompson*, 985 F.2d at 205-06; *Stroble*, 538 F. App'x at 480. Greer's claim for declaratory relief is dismissed with prejudice.

### IV. Motion for Leave to Amend

In conjunction with his response to the defendants' motion to dismiss, Greer has requested leave to file another amended complaint to correct certain deficiencies in his existing complaint. (Docket Entry Nos. 48, 49). Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint shall be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend may be denied when there is evidence of undue delay, repeated failures to cure deficiencies, undue prejudice, or futility. *See, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014). In addition, the court may consider whether the facts to be included in the proposed amended complaint were known to

the party when the original complaint was filed. *See Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979).

This court has granted Greer leave to amend on five separate occasions in the seventeen months since he filed his initial complaint. Despite filing multiple amended and supplemental complaints, Greer has still failed to state a claim. The facts Greer seeks to add in his proposed amended complaint were known to him months before he filed the amended and supplemental amended complaints in response to this court's August 5, 2022, order, yet he did not include those facts in those amended pleadings. In addition, granting Greer leave to amend to file his proposed amended complaint would be futile in light of Supreme Court and Fifth Circuit precedent concerning an inmate's First Amendment rights. Greer's motion for leave to file another amended complaint, (Docket Entry No. 48), is denied.

**V.    Conclusion**

Based on the above, the court orders as follows:

1. Greer's motion to voluntarily dismiss defendant Bobby Lumpkin from this action is granted. The claims against Lumpkin are dismissed without prejudice under Rule 41(a)(1)(A)(i).

2. Greer's motion for leave to file an amended complaint, (Docket Entry Nos. 48, 49), is denied. Leave to amend would be futile.

3. The motion to dismiss filed by Patrick O'Daniel, (Docket Entry No. 33), is granted. Greer's claims against O'Daniel in his official capacity are dismissed without prejudice under Rule 12(b)(1). Greer's claims against O'Daniel in his individual capacity are dismissed with prejudice under Rule 12(b)(6).

4. The motion to dismiss filed by defendants Eric Guerrero and Margarita Thomas, (Docket Entry No. 33), is granted. Greer's claims against them in their official and individual capacities are dismissed with prejudice under Rule 12(b)(6).

5. All pending motions are denied as moot.

6. Final judgment will be entered separately.

SIGNED on May 23, 2023, at Houston, Texas.

                                                 Lee H. Rosenthal
                                      United States District Judge